2012 WL 3595093
Only the Westlaw citation is currently available.
United States District Court,
W.D. Oklahoma.

EMMANUEL BAPTIST CHURCH, Plaintiff,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

No. CIV–11–594–D.
|
Aug. 21, 2012.

**Attorneys and Law Firms**

David A. Christoffel, Elizabeth L. Sandoval, Jeremy Michael Masten, Arguello Hope & Associates, Houston, TX, John B. Ward, Law Office of Daniel M. Davis, Oklahoma City, OK, for Plaintiff.

Daniel C. Andrews, Holly D. Shull, Jones Andrews & Ortiz, Oklahoma City, OK, for Defendant.

***ORDER***

TIMOTHY D. DEGIUSTI, District Judge.

***1** Before the Court is Defendant's motion for partial summary judgment [Doc. No. 32]. Plaintiff timely responded, and Defendant filed a reply.

*I. Background:*

Plaintiff asserts causes of action alleging breach of two insurance contracts covering structures which sustained hail and other storm damage on May 16, 2010. In the first count of the Amended Complaint, Plaintiff alleges Defendant breached an insurance contract covering the primary church building and adjacent structures located at 2401 North Kelley in Oklahoma City (the "North Kelley property"), and it breached a separate insurance contract covering a house owned by Plaintiff at 2008 N.E. 30th Street in Oklahoma City (the "N.E. 30th property"). The second count of the Amended Complaint alleges that Defendant also breached its duty of good faith and fair dealing and acted in bad faith in handling the two insurance claims. As to these contentions, Plaintiff seeks both actual and punitive damages.

Defendant moves for summary judgment on the breach of insurance contract claim involving the policy covering the N.E. 30th property. It also seeks judgment on the bad faith allegations related to both insurance claims and Plaintiff's demand for punitive damages as to those claims. Defendant expressly does not seek judgment on Plaintiff's breach of insurance contract claim involving the North Kelley property.

*II. Summary judgment standards:*

Summary judgment shall be granted where the undisputed material facts establish that one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Swackhammer v. Sprint/ United Mgmt. Co.,* 493 F.3d 1160, 1167 (10th Cir.2007); *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1273 (10th Cir.2005). However, to establish the existence of a "genuine" material factual dispute, the nonmoving party must present evidence to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 45 U.S. 574, 588, 4 How. 574, 11 L.Ed. 1108 (1986).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322. However, it is not the responsibility of the summary judgment movant to disprove the plaintiff's claim; rather, the movant need only point to "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir.1998). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted).

***2** In opposing a summary judgment motion, a plaintiff cannot rely on the allegations in his complaint, his personal beliefs, or conclusory assertions; rather, he must come forward with evidence outside the pleadings sufficient

EXHIBIT
21

to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324. The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *Adler,* 144 F.3d at 671 (citing *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992)). Conclusory arguments in the nonmovant's brief are not adequate to create an issue of fact, and are insufficient to avoid summary judgment. *Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125, 1136 (10th Cir.2003). It is not the responsibility of the Court to attempt to locate evidence not cited by a plaintiff which could support his position. *Adler,* 144 F.3d at 671.

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T–Mobile USA, Inc.,* 490 F.3d 1211, 1216 (10th Cir.2007) (citing *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.' " *Id.* (quoting *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995)).

*III. The record before the Court:*

The record reflects the following facts are not disputed or are established by the evidence submitted as exhibits to the parties' summary judgment briefs.

Defendant issued Policy No. 96–12–3581–9, providing coverage for the North Kelley property located at 2140 North Kelley in Oklahoma City. A separate policy, No. 96–64–4346–1, provides coverage for the N.E. 30th property ("N.E. 30th Policy"). Both policies provided coverage for hail and wind damage, and both were effective on May 16, 2010, when the insured properties sustained damage. A copy of Policy No. 96–12–3581–9 (the "North Kelley Policy") is submitted as Defendant's Exhibit 1.[1] It is not disputed that the North Kelley Policy has a deductible of $5,000.00, and the N.E. 30th Policy deductible is $500.00.

*The N.E. 30th property:*

Plaintiff notified Defendant of the damage to the N.E. 30th property on July 28, 2010. Defendant's Reply Ex. 2, p. 12.[2] The N.E. 30th property was inspected by Defendant on August 3, 2010. Based on that inspection and Defendant's estimate of the costs of repair, less the deductible and depreciation, Defendant issued a $4,809.13 check to Plaintiff on August 3, 2010. *Id.* at pp. 10, 12.

On or about October 12, 2010, Plaintiff's counsel contacted Defendant and advised that his law firm had been retained by Plaintiff with regard to the N.E. 30th Policy claim.[3] Defendant's Ex. 3. He requested copies of the N.E. 30th Policy and any documents regarding Plaintiff's claim and Defendant's communications with Plaintiff regarding the claim. *Id.* On November 3, 2010, Defendant sent the requested copies to counsel, and enclosed a copy of the August 3, 2010 check for $4,809.13, along with Defendant's estimate of the loss to the N.E. 30th property.

***3** On January 20, 2011, Plaintiff's counsel sent a letter to Defendant in which Plaintiff accused Defendant of improperly handling the N.E. 30th property insurance claim, and demanded $2,289.03 in additional costs of repair for the property. Defendant's reply Ex. 5 at p. 2. In response, Defendant asked Plaintiff's counsel to furnish a copy of the estimate for the additional repair costs, and Plaintiff's counsel sent the estimate on April 18, 2011. Defendant's reply Ex. 7. A copy of Plaintiff's estimate, reflecting a total cost of $7,597.16, was submitted. Defendant's reply Ex. 8. The estimate was received by Defendant on April 26, 2011 and, on May 9, 2011, Defendant issued to Plaintiff an additional check in the amount of $2,085.16. Defendant's reply Ex. 2, p. 4. The August 3, 2010 check for $4,809.13 plus the May 9, 2011 check for $2,085.16 comprise the total payment by Defendant of $6,894.29 paid to Plaintiff on its claim for the N.E. 30th property.

Plaintiff contends the May 16, 2010 damage to the N.E. 30th property was $7,597.16, which consisted of all repairs on that structure. The evidence reflects that Defendant agreed the replacement cost was $7,597.16. Defendant's Ex. 22, p. 3. Defendant's Ex. 22, p. 3. Its total payment to Plaintiff was based on that amount, with a reduction of $500.00 for the deductible and $202.87 for depreciation, resulting in a total payment by Defendant of $6,894.29. *Id.* Following Plaintiff's receipt of the May 9, 2011 check of $2,085.16, Plaintiff made no additional demand for insurance coverage for the N.E. 30th property.

*The North Kelley property:*

On June 22, 2010, Plaintiff notified Defendant of its claim for the May 16, 2010 damage to the North Kelley property. With respect to the North Kelley property, the evidence

of record reflects the damage to the church building and auxiliary buildings was significantly greater than the damage to the N.E. 30th property. The record also reflects that there remains a dispute as to whether Defendant's several payments to Plaintiff are sufficient to satisfy Defendant's obligations under the contract of insurance for the North Kelley property and whether it breached the contract of insurance. Because Defendant does not seek judgment on the breach of contract claim regarding the North Kelley property, the Court will not detail the evidence in the record regarding the ongoing dispute about the nature of the damage sustained, the repair work performed, or the propriety of the amounts paid. However, some of these facts are material to Plaintiff's bad faith cause of action regarding this insurance claim, as Plaintiff contends the manner in which Defendant handled the claim and the delay in making various payments constitute bad faith.

The record reflects that Defendant has issued several checks to Plaintiff for repairs related to the North Kelley Policy claim. A total of $154,397.53, consisting of several separate checks, has been paid to Plaintiff during the pendency of its claim. Defendant's Ex. 20. Plaintiff contends that the total loss was $310,101.93, although it agrees that the $5,000.00 deductible applies, thus reducing its claimed loss amount to $305,101.93. Defendant's Ex. 9. Subsequent estimates from Plaintiff from EDC Contracting Consultants ("EDC") and from Jim Kotter reflected a total repair cost of $314,190.91. Defendant's Ex. 14. The EDC estimate was received by Defendant on April 29, 2011, approximately eleven months after the May 16, 2010 damage. This lawsuit was initially filed in state court on April 12, 2011, and it was removed to this Court. On August 24, 2011, Plaintiff filed an Amended Complaint seeking $314,190.91 on this claim, alleging it received an invoice reflecting that amount for completed repairs. Amended Complaint [Doc. No. 13] at ¶¶ 28–29.

***4** The Amended Complaint and the evidence in the record reflect it is not disputed that Defendant has made several payments on the North Kelley damage claim and that the total paid is $154,397.53. The record before the Court reflects Defendant's initial inspection on July 2, 2010 resulted in an estimate of total damages of $49,987.73. The deductible of $5,000.00 was subtracted from that amount, along with depreciation, and Defendant issued a check to Plaintiff for the balance of $30,693.70. Defendant's Exs. 3 at p. 22 and 4, at p. 324. When the check was sent to Plaintiff on July 2, 2010, it was accompanied by an explanation of the procedure to be followed by Plaintiff if it intended to seek replacement cost coverage under the terms of the North Kelley Policy. Defendant's Ex. 5. Plaintiff was advised that, to do so, it must notify Defendant within 180 days of the loss, complete the actual repair or replacement, and confirm its completion by submitting invoices, receipts or other documentation. *Id.* The explanation further stated that Defendant would consider payment of the replacement cost benefits prior to actual repair or replacement if it determined the costs would be incurred because "repairs are substantially under way or you present a signed contract acceptable to us." *Id.* Defendant provided the same explanation with respect to the auxiliary buildings damaged by the storm and covered by the North Kelley Policy. Defendant's Ex. 6.

The record reflects that Plaintiff did not contact Defendant regarding the claim upon receipt of the check and explanations. However, on September 11, 2010, Defendant received a letter from a legal assistant stating the law firm had been retained to represent Plaintiff in connection with its claim; the letter requested copies of the policy and all documents related to the pending claim on the North Kelley property. Defendant's Ex. 7. On September 13, 2010, Defendant replied, and enclosed a copy of its estimate of the damage. It also stated that, if Plaintiff would like "a second inspection, we will need a copy of an estimate from the contractor of your choosing." Defendan's Ex. 8.

On September 23, 2010, Defendant received a letter from Plaintiff's counsel, alleging violations by Defendant of the Oklahoma Insurance Code and stating the damage totaled $310,101.93. Plaintiff also made demand for additional damages, including $15,000.00 for mental anguish, statutory penalties, and attorney fees of $30,000.00. Defendant's Ex. 9. Enclosed with the letter was an estimate prepared on behalf of Plaintiff by Jim Kotter and estimating the total costs of repair for the North Kelley property as $310,101.93. *Id.* Upon receipt of the letter, Defendant contacted Plaintiff's counsel to arrange a re-inspection of the North Kelley property. On October 22, 2010, Defendant's representative met with Jim Kotter and a legal assistant for Plaintiff's counsel and inspected the interior damage to the North Kelley property. Defendant's Ex. 2, p. 10. On October 28, 2010, the exterior damage was inspected. Defendant agreed there was additional damage which had not been listed in its July 2, 2010 inspection. On November 23, 2010, Defendant completed and submitted to Plaintiff a revised estimate reflecting $81,408.75 damage to the church building and $52,650.92 to the auxiliary buildings, or a total damage estimate of $134,059.67. Defendant's Ex. 10, pp. 114–186. On

November 23, 2010, Defendant issued a check to Plaintiff in the amount of $82,681.09. Defendant's Ex. 11.

***5** On February 1, 2011, Plaintiff notified Defendant that the contractor replacing the damaged heating and air conditioning unit on the church building roof had advised the unit was a 20–ton unit instead of the 10–ton unit covered in Defendant's estimate. Defendant then issued a $4,468.011 check to Plaintiff on February 10 for the additional cost. Defendant's Ex. 2, p. 5; Ex. 12, p. 562. On February 23, 2011, Defendant received a contract between Plaintiff and its contractor, and the same reflected actual replacement of the unit. Based on the contract estimate, Defendant issued an additional payment of $20,999.16 to Plaintiff. Defendant's Ex. 2, p. 4.

On April 29, 2011, Defendant received from Plaintiff's counsel an estimate prepared by EDC and reflecting a total of $314,190.91 for all repairs to the North Kelley property. The parties dispute whether additional repairs to the property were completed after that date. However, on November 4, 2011, another reinspection took place and, based on the results, Defendant issued an additional payment to Plaintiff of $25,55.57, representing repairs completed at that time. Defendant's Ex. 20. As a result, the total paid to Plaintiff was $164,397.53. Defendant contends additional payments have not been made because, although Plaintiff has alleged it received an invoice for all completed work, it has not provided that evidence to Defendant. [4]

*IV. Application:*

*A. Breach of insurance contract covering the N.E. 30th property:*

The interpretation of an insurance contract and whether it is ambiguous is determined by the Court as a matter of law. *Haworth v. Jantzen,* 172 P.3d 193, 196 (Okla.2006); *Alea London Ltd. v. Canal Club, Inc.,* 231 P.3d 157,160 (Okla.Ct.App.2009). Under Oklahoma law, an insurance policy is a contract subject to general interpretation principles of ordinary contract law. *IDG, Inc. v. Continental Casualty Company,* 275 F.3d 916 (10th Cir.2001). [5] Because interpretation of an unambiguous contract or insurance policy is a question of law for the Court, that interpretation is proper for summary judgment adjudication. *May v. Mid–Century Ins. Co.,* 151 P.3d 132, 140 (Okla.2006).

In this case, the only breach of insurance contract claim on which Defendant seeks summary judgment is Plaintiff's claim for damage to the N.E. 30th property. Plaintiff does not identify any provision of the N.E. 30th Policy which it contends was breached by Defendant. In response to the motion, Plaintiff argues that its basis for this claim is the contention that Defendant failed to pay a sufficient amount to satisfy its contract obligation. According to Plaintiff, the N.E. 30th property sustained damage amounting to $7,597.16, and Defendant paid $6,894.29, a difference of $702.87. It is not disputed that the Policy covering the N.E. 30th property had a deductible of $500.00, thus leaving a difference of $202.87 in the amount of damage which Plaintiff claims and the amount actually paid by Defendant.

***6** Defendant presents evidence, however, that the roof was insured for actual cash value only. As a result, depreciation was applied. Defendant argues, and Plaintiff does not dispute, that the depreciation was $202.87. In other words, when the $500.00 deductible and the appropriate depreciation are applied, the amount paid to Plaintiff was the correct amount according to the the N.E. 30th Policy.

In fact, the evidence before the Court reflects that Plaintiff has no complaint regarding the Defendant's payment of the claim on the N.E. 30th property. Deacon Jackie Flowers testified that he does not believe any additional amounts are owed on that claim. Deposition of Jackie Flowers, Defendant's Ex. 23 ("Flowers dep.), p. 124, lines 19–23. Deacon Flowers testified that he reported that claim, that Defendant's representatives were courteous and professional with him, and that he has no complaints with Defendant regarding that claim. *Id.,* p. 124, lines 24–25; p. 125, lines 1–6. Similarly, Pastor Chester West testified that the amount paid by Defendant was sufficient to pay for the necessary repairs to the N.E. 30th property, and those repairs were completed. Chester West Deposition, Defendant's Ex. 24, p. 51, lines 24–25; p. 52, lines 1–7.

Notwithstanding the undisputed evidence that Plaintiff's N.E. 30th property insurance claim has been paid and that Plaintiff is satisfied with Defendant's handling of that claim, Plaintiff persists in asserting Defendant breached the insurance contract on the N.E. 30th property. In its response brief, Plaintiff's only argument in support of its claim is the contention that Defendant unreasonably delayed full payment of the claim and that its delay constitutes a breach of the contract of insurance.

The only authority offered by Plaintiff in support of this contention is *Ball v. Wilshire Ins. Co.,* 221 P.3d 717 (Okla.2009). However, that decision does not support a

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

breach of insurance contract claim based on the insurer's delay. Instead, it discusses whether an unreasonable delay in paying a claim may form the basis for a tort action based on breach of the insurer's duty of good faith. *Id.* at 724. Thus, the authority submitted by Plaintiff is not persuasive on the issue of its breach of contract claim.

Assuming, however, that an unreasonable delay in payment of a claim can constitute a breach of the insurance contract, the undisputed evidence in this case does not support that claim. The evidence establishes that, although the damage to the N.E. 30th property occurred on May 16, 2010, Plaintiff did not notify Defendant of its claim until July 28, 2010. The undisputed evidence also establishes Defendant promptly inspected the damage on August 3, 2010 and, based on its estimate, gave Plaintiff a check for $4,809.13 on that same date. In other words, Defendant made an initial payment to Plaintiff five days after it was notified of Plaintiff's claim.

Plaintiff offers no evidence that it complained to Defendant about the inspection, the estimated damages or the amount of the check when it was received. In fact, the undisputed evidence establishes that Plaintiff did not contact Defendant regarding this claim until approximately two months later, when its retained counsel submitted an October 12, 2010 letter to Defendant requesting copies of the N.E. 30th Policy, the estimate, and the August 3, 2010 check paid to Plaintiff. The undisputed evidence shows that Defendant promptly responded to this request, and sent the requested material on November 3, 2010.

***7** The evidence reflects that Plaintiff did not again contact Defendant until January 20, 2011, when counsel sent a demand letter accusing Defendant of mishandling the claim and making demand for an additional payment of $2,289.03 for repairs to the N.E. 30th property. Defendant requested a copy of the repair estimate for that amount, and Defendant received Plaintiff's response and the estimate on April 26, 2011. On May 9, 2011, approximately two weeks after it received Plaintiff's claim for additional repair costs, Defendant sent Plaintiff an additional check for $2,085.16. It is not disputed that the total amount paid to Plaintiff was sufficient to satisfy the claim on the N.E. 30th property.

Plaintiff offers no authority which could support a conclusion that the foregoing chronology of events could support a claim for breach of the insurance contract based on an alleged unreasonable delay. Defendant's motion for summary judgment is granted on this claim.

**B. Bad faith claims:**

In addition to the breach of insurance contract claims, Plaintiff also asserts a separate cause of action alleging that, with respect to Plaintiff's claims on both the North Kelley property and the N.E. 30th property, Defendant breached its duty of good faith and fair dealing. Defendant seeks summary judgment on this claim.

Under Oklahoma law, an insurer has an implied duty to deal fairly and act in good faith toward its insured, and the violation of that duty gives rise to an action in tort. *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okla.1977). "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." *Conti v. Republic Underwriters Ins. Co.,* 782 P.2d 1357, 1360 (Okla.1989)(citing *McCorkle v. Great Atlantic Insurance Co.,* 637 P.2d 583 (Okla.1981)). "Bad faith cannot exist if an insurer's conduct was reasonable under the circumstances." *Barnes v. Okla. Farm Bureau Mut. Ins. Co.,* 11 P.3d 162, 170–171 (Okla.2000). *See also Southern Hospitality, Inc. v. Zurich American Ins. Co.* 393 F.3d 1137, 1142 (10th Cir.2004). "The decisive question is whether the insurer had a good faith belief, *at the time its performance was requested,* that there was a justifiable reason" for its decision. *Ball,* 221 P.3d at 725 (emphasis added). *See also Newport v. USAA,* 11 P.3d 190, 195 (Okla.2000); *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 798 –799 (10th Cir.1995) (citations omitted).

To establish a cause of action for the violation of the duty of good faith and fair dealing in Oklahoma, a plaintiff must prove each of the following elements: 1) the claimant was entitled to coverage under the insurance policy at issue; 2) the insurer had no reasonable basis for delaying or denying payment; 3) the insurer did not deal fairly and in good faith with the claimant; 4) the insurer's violation of the duty of good faith and fair dealing was the direct cause of the injury sustained by the claimant. *Oklahoma Uniform Jury Instructions–Civil (2d), No.22.2; Ball,* 221 P.3d at 724 (Okla.2009). "The absence of any one of these elements defeats a bad faith claim." *Ball,* 221 P.3d at 724.

***8** This Court's task, when presented with a motion for summary judgment on an insured's claim against an insurer for bad faith under Oklahoma law, was explained by the Tenth Circuit as follows:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

> A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may reasonably be perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

*Oulds v. Principal Mutual Life Insurance Co.,* 6 F.3d 1431, 1436–37 (10th Cir.1993) (citations omitted).

It is well established that an insurer does not act in bad faith by disagreeing with an insured regarding coverage or the amount of loss, and resorting to a judicial forum:

> We recognize that there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

*McCorkle v. Great Atlantic Ins. Co.* 637 P.2d 583, 587 (Okla.1981). (citations omitted). Thus, even if a jury determines the insurer's decision was incorrect, that determination does not necessarily mean that the insurer acted in bad faith in reaching its decision. *Id.*

In Oklahoma, the insurer's duty to act reasonably extends to the manner in which the insurer investigates an insured's claim. *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1109 (Okla.1991) (holding that an insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances."). However, the duty to investigate is not unlimited, and is judged according to the circumstances. *Roberts v. State Farm Mutual Automobile Insurance Company,* 2003 WL 1559155, at ——4 (10th Cir. Mar.26, 2003) (unpublished opinion). "Under Oklahoma law, however, an insurer's investigation need only be reasonable, not perfect." *Id.* (citing *Buzzard,* 824 P.2d at 1109).

Bad faith is also not shown where the insurer's personnel made errors in the processing of a claim even where such errors rise to the level of negligence, as evidence of an insurer's internal negligence in handling a claim "is not probative of the issue of bad faith. Bad faith and negligence are not synonymous." *Peters v. American Income Life Ins. Co.* 77 P.3d 1090, 1098 (Okla.Civ.App.2002) (citing *Myers v. Lashley,* 44 P.3d 553, 563 (Okla.2002)).

***9** With respect to the N.E. 30th property claim, Plaintiff's sole basis for alleging bad faith by Defendant is the delay in receiving full payment on this claim. However, as the Court has concluded with respect to its discussion of Plaintiff's breach of contract claim regarding the N.E. 30th property, the undisputed facts in evidence establish there was no unreasonable delay caused by Defendant. *See* discussion, *supra.* That same undisputed evidence establishes that, with respect to the bad faith claim, Defendant's conduct could not "reasonably be perceived as tortious," the requirement necessary to overcome summary judgment. *See Oulds,* 6 F.3d at 1436–37. Defendant's motion for summary judgment on the bad faith claim based on the N.E. 30th property is thus granted.

Plaintiff's claim of bad faith conduct regarding the North Kelley property is also substantially based on the alleged delay in paying the claim. As Defendant argues in its reply, Plaintiff's contention is based on the fact that, after additional demand was made by Plaintiff, Defendant reexamined the property damage and the re-examination resulted in additional payments to Plaintiff for specific items not noted in Defendant's initial inspection of the North Kelley property. As Defendant points out, "disagreement as to the extent or cause

of damage between Defendant's inspectors and Plaintiff's roofer and expert is not enough to sustain a bad faith claim." *Hartsfield v. Farmers Ins. Co.,* 2011 WL 2680840, at *4 (W.D.Okla. July 8, 2011) (unpublished opinion). In fact, even an insurer's refusal to conduct a reinspection has been considered insufficient to support a claim for bad faith. *Lopez v. Farmers Ins. Co.,* 2011 WL 1807158, at * 3 (W.D.Okla. May 6, 2011) (unpublished opinion).

Similarly, if Plaintiff's bad faith claim is based on a contention that Defendant's initial investigation was inadequate, the " 'insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information.' " *Id.* (quoting *Sellman v. AMEX Assur. Co.,* 274 F. App'x 655, 658 (10th Cir.2008) (unpublished opinion). In this case, it is not disputed that the reinspection conducted by Defendant resulted in additional payments to Plaintiff, and there is no evidence that Defendant failed to make payment for the additional damage noted in the reinspection. Plaintiff does not offer sufficient evidence to support a contention that Defendant's initial investigation was so inadequate that it supports a claim of bad faith. Indeed, contrary to Plaintiff's assertion, Defendant's willingness to reconsider its initial estimate and increase the amount due Plaintiff under the North Kelley Policy arguably militates against an inference of bad faith. In any event, that Defendant's reinspection found additional hail damage, without more, is insufficient to create a dispute of material facts regarding the bad faith claim.

***10** The record also reflects that Defendant and Plaintiff continue to disagree with regard to some additional amounts which Plaintiff contends are required to satisfy its claim under the insurance contract. For example, Defendant contends Plaintiff has not provided the documentation required by the North Kelley Policy to show that repairs have been completed or are ongoing, and it contends payment for such repairs is not required until that documentation is received. Plaintiff appears to contend that it has provided the necessary documentation. [6] This dispute does not, however, involve the issue of Defendant's good faith, but involves Plaintiff's separate claim of a breach of the insurance contract. An insurer's disagreement with the insured regarding the requirements of the insurance policy does not support the tort of bad faith. "[D]isagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions" do not support a bad faith claim. *McCorkle,* 637 P.2d at 587.

In summary, Plaintiff has failed to present evidence sufficient to create a material fact dispute regarding its claim that Defendant breached its duty of good faith with respect to the North Kelley property. Whether Defendant has satisfied its contractual obligations regarding the insurance claim on the North Kelley property remains an issue to be determined, and the arguments asserted by Plaintiff relate to that issue. Plaintiff's contentions are not, however, sufficient to submit the question of bad faith to a jury. Defendant's motion for summary judgment is thus granted.

Having concluded that Defendant is entitled to summary judgment on Plaintiff's only tort claims, the Court need not address Defendant's additional argument that punitive damages are not recoverable. The Court observes, however, that there is no evidence in the record which is sufficient to support consideration of punitive damages under these facts.

*V. Conclusion:*

For the foregoing reasons, Defendant's motion for partial summary judgment [Doc. No. 32] is GRANTED. Defendant is entitled to judgment on Plaintiff's claims that Defendant breached its duty of good faith and fair dealing as well as Plaintiff's claim that Defendant breached the contract of insurance on the N.E. 30th property. The action will proceed on the remaining claim that Defendant breached the policy of insurance covering the North Kelley property.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3595093

## Footnotes

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

1 The Court has not located a copy of the N.E. 30th Policy in the record. However, the parties do not dispute the coverage provided by the N.E. 30th Policy, nor is there a dispute regarding any terms of that policy.

2 In its response brief, Plaintiff objects to the use of Defendant's Activity Log, Exhibit 2, as evidence, arguing that the log reflects statements and entries of activity made by Defendant's employees, which Plaintiff contends is inadmissible hearsay. However, a review of the activity logs shows that these are records maintained by Defendant to reflect communications and actions with regard to an insured's claim. There is no dispute that these records are maintained in the ordinary course of Defendant's business. Accordingly, such records qualify as an exception to the hearsay rule pursuant to Fed.R.Evid. 803(6). Furthermore, Defendant presents this evidence to establish the relevant dates and actions taken with regard to Plaintiff's two claims. Plaintiff's response does not dispute the accuracy of the dates and actions reflected in the logs. Finally, in its response brief, Plaintiff also cites to the logs as evidence in support of its contentions. For these reasons, Plaintiff's objection is overruled.

3 Although Plaintiff's counsel had sent a September 11, 2010 letter to Defendant notifying it that counsel had been retained by Plaintiff with regard to the North Kelley insurance claim, that letter did not mention the N.E. 30th property or Plaintiff's claim for coverage on that property. *See* September 11, 2010 letter, Defendant's Ex. 2, p. 14.

4 This dispute is not discussed in detail because it relates to Plaintiff's breach of contract claim on the North Kelley property, and Defendant does not seek judgment on that claim.

5 The ordinary rules of interpretation are set forth in a statutory scheme found at Okla. Stat. tit. 15 § 151 *et seq.*

6 In its reply brief Defendant asserts that it has now taken action on additional information provided by Plaintiff, resulting in another payment to Plaintiff.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.