2011 WL 1807158
Only the Westlaw citation is currently available.
United States District Court,
W.D. Oklahoma.

Nicolas LOPEZ, Plaintiff,
v.
FARMERS INSURANCE COMPANY, INC., et al., Defendants.

No. CIV–10–0584–HE.
|
May 6, 2011.

**Attorneys and Law Firms**

David L. Smith, Attorney at Law, Oklahoma City, OK, Joe E. White, Jr., Kent R. McGuire, Timothy B. Farris, White & Weddle PC, Oklahoma City, OK, Kevin T. Bennett, The Bennett Law Firm, Oklahoma City, OK, for Plaintiff.

Greg D. Givens, Sheila R. Benson, Edmonds Cole Law Firm, Oklahoma City, OK, for Defendants.

***ORDER***

JOE HEATON, District Judge.

***1** Plaintiff Nicolas Lopez filed this action against Farmers Insurance Company, Inc. and Farmers Insurance Exchange (collectively "Farmers") asserting breach of contract and bad faith claims arising from a dispute over damage to plaintiff's roof. Defendants have filed a motion for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes defendants' motion should be granted in part and denied in part.

*Background*

Plaintiff's home was built in approximately 1991 with a wood roof. Plaintiff purchased the home new in 1992 and has lived in it continuously. From the date of purchase until February, 2009, the roof had never been repaired.

Plaintiff's residence was insured by Farmers. The homeowners policy provided coverage for "accidental direct physical loss to property," but did not insure for loss consisting of, or caused directly or indirectly by "[w]ear and tear, marring, [or] deterioration."[1] Defendant's Exhibit 2.

On October 15, 2009, plaintiff submitted a claim to Farmers for hail damage after his family noticed water stains on an interior ceiling. Farmers' claims representative Natalie Merritt, who was assigned the claim, inspected the interior of plaintiff's home and his roof on November 2, 2002. She noted in the loss report:

> Inspected dwelling for reported damage. Inspected roof for hail damage and found damage to 2 exhaust caps. There is extreme wear/tear to the roofing surface, which is the original wood roof. Shingles do not have pock marks; there were some areas where algae knocked off. Roof has weathered splits, washouts and staples/nails coming out everywhere. Source of interior water damage is wear/tear to pipejack boots and to ridgecaps. Contractor not in agreement with my scope. Inspected elevations and found no damage.

Defendants' Exhibit 4. Ms. Merritt took photographs during her inspection of the roof and the interior water damage.[2] She prepared an estimate of $415.01 to replace the property she determined was damaged by the hail—the two exhaust caps. The estimate was less than plaintiff's $1,000 deductible.

Neil Cagle from All American Roofing was present during Ms. Merritt's inspection of the roof. He had inspected plaintiff's roof in March 2009, after a wind and hail storm the preceding month. He observed damage to the roof, including missing shingles, which he believed was caused by wind and hail. When he was on the roof with Ms. Merritt, Mr. Cagle identified shingles which he believed had been damaged by hail. She disagreed with his analysis, concluding that what "he

EXHIBIT
22

was calling was hail damaged ... was wear and tear.” Plaintiff's Exhibit A, p. 22.

***2** Mr. Cagle did not take any photographs of plaintiff's roof or record the number or location of the missing shingles he saw. Mr. Cagle testified that “the roof was very old” and “heavily deteriorated from age.” Defendants' Exhibit 5, pp. 10, 15. He stated that “because of the age and deterioration that comes with age, we found that it—it would be an unlikely candidate to repair it.” *Id.* at p. 10. All American Roofing sent defendants an estimate, dated November 2, 2009, in the amount of $42,010.79, to remove and replace plaintiff's entire roof.

On November 5, 2009, plaintiff spoke with Dennis Powell, a Farmers' claims representative. Mr. Powell told plaintiff he could not request a second inspection because plaintiff's contractor, Mr. Cagle, was present during Ms. Merritt's inspection. Plaintiff filed this lawsuit in May, 2010.

*Analysis*

The initial issue is whether, as plaintiff contends, the policy is ambiguous. The court concludes it is not. Plaintiff simply has misconstrued defendants' argument. Defendants are not contending that the policy exclusion for “wear and tear, marring, [or] deterioration,” precludes recovery for what would otherwise be a covered loss. Rather, their defense is that, except for the exhaust caps, plaintiff's wood roof did not sustain hail and/or wind damage. They claim the “seventeen year old wood shingles ... were damaged solely by wear, tear and deterioration.” Defendants' brief, pp. 13–14. [3]

A material fact dispute precludes summary judgment on plaintiff's breach of contract claim. A jury will have to determine whether plaintiff's seventeen year old roof needed to be replaced because of wind and hail damage or because of severe deterioration.

Defendants' request for summary judgment on plaintiff's bad faith claim presents a somewhat closer question. The tort of bad faith was first recognized by the Oklahoma Supreme Court in *Christian v. American Home Assur. Co.,* 577 P.2d 899 (Okla.1978). [4] It arises from the insurer's implied duty to deal fairly and act in good faith with its insured. *Southern Hospitality, Inc. v. Zurich American Ins. Co.,* 393 F.3d 1137, 1142 (10th Cir.2004). The duty is not breached if the insurer refuses to pay a claim or litigates a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate. *Id.* Otherwise put, “[t]he insurer will not be liable for the tort of bad faith if it ‘had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.’ ” *Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1436 (10th Cir.1993) (quoting *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 841 P.2d 568, 572 (Okla.1992)).

In determining whether to pay a claim, the insurer must conduct an investigation “reasonably appropriate under the circumstances.” *Willis v. Midland Risk Ins. Co.,* 42 F.3d 607, 612 (10th Cir.1994) (quoting *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla.1991)). Farmers' actions are evaluated in light of the facts it knew or should have known at the time it was asked to perform its contractual obligation. *Oulds,* 6 F.3d at 1437 “If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable.” *Willis,* 42 F.3d at 612.

***3** Plaintiff asserts that Farmers did not handle the claim properly, relying on the testimony of Diane Luther, a licensed adjuster. While Ms. Luther's testimony clearly supports plaintiff's breach of contract claim, it does not show that defendants' handling of the claim met “the minimum level of culpability necessary for liability against an insurer to attach, [which] is more than simple negligence .” *Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1094 (Okla.2005). Her main criticisms of defendants' handling of plaintiff's claim were that Ms. Merritt may have “had the tunnel vision on” before she got on the roof—she may have assumed, because of the age of the roof, that the damage was due to deterioration, *id.,* and defendants' refusal to do a reinspection with a different adjuster. [5]

Neither cited error amounts to unreasonable conduct. Ms. Luther offers no basis for her assertion that Ms. Merritt may have had a preconceived opinion regarding the cause of the damage to plaintiff's roof. And, although Ms. Luther testified that industry standards would require, under the circumstances of this case, that a different adjuster reinspect plaintiff's roof, she did not indicate what new information would have been obtained through a second look. [6]

“When a plaintiff bases a bad faith claim on an inadequate investigation theory, ‘the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information.’

" *Sellman v. AMEX Assur. Co.,* 274 Fed.Appx. 655, 658 (10th Cir.2008) (unpublished) (quoting *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.,* 71 F.3d 335, 345 (10th Cir.1995). The crux of plaintiff's argument is that defendants disagreed with his roofer and expert regarding the cause of the damage to his roof. As plaintiff has not "show[n] that [Farmers] overlooked material facts or 'that a more thorough investigation would have resolved the discrepancy' involved in the legitimate dispute, [plaintiff] cannot claim bad faith based on an inadequate investigation." *Id.* (quoting *Oulds,* 6 F.3d at 1442). In the absence of "conflicting evidence from which different inferences may be drawn regarding the reasonableness of [Farmers'] conduct," *Badillo,* 121 P.3d at 1093 (quoting *McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583, 587 (Okla.1981), defendants are entitled to summary judgment on plaintiff's bad faith claim.

Although further discussion of punitive damages is unnecessary in light of the court's disposition of the bad faith claim, the court additionally notes the absence of evidence sufficient to create a justiciable issue as to such damages. To warrant submission of a request for punitive damages to a jury in these circumstances, a plaintiff must present evidence "of conduct rising to the level of reckless disregard or malice on the part of [Farmers] to warrant submission of that issue to the jury." *Id.* at 1105. The Oklahoma Supreme Court "has recognized that the availability of punitive damages in a case by an insured against his/her insurer for breach of the implied duty of good faith and fair dealing is not automatic, but rather is governed by the standard applicable in other tort cases." *Id.* at 1106. Submission of the issue of punitive damages to a jury may be improper, even where there is evidence to support recovery of actual damages. *Id.*

***4** Plaintiff has not produced "competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred." *Id.* [7] Plaintiff asserts that if he "successfully proves Farmers engaged in an unfair practice of denying claims of 'aged' roofs based on its wear and tear exclusion, that may be evidence of reckless disregard." Plaintiff's response, p. 27. He also asserts that his "expert witness, Diane Luther will testify Defendants' handling and investigation of the Lopez claim violated accepted industry standards and they acted in bad faith." *Id.* However, plaintiff failed to submit any evidence substantiating his allegation of defendants' routine denial of roofing claims on aged roofs [8] and, as noted above, more is required to demonstrate reckless conduct than bad faith. Plaintiff did not cite to any testimony of Ms. Luther in which she states, or from which it can be inferred, that defendants acted with "reckless disregard, sufficient to support an inference of evil intent and malice, on the part of [Farmers] towards [its] insured." *Badillo,* 121 P.3d at 1106. What she did say was that "different adjusters have different opinions about the same roof," plaintiff's Exhibit C, p. 37, and that she thought that what Ms. Merritt and Mr. Cagle say "is what they believed at the time they were up there [on the roof]." *Id.* at p. 40. She also stated

> "[Y]ou know, you live in Oklahoma, we're subject to all types of extremes of weather and storms, especially wind and hail, and if it's not that obvious, it may be that that's the right thing to do, because, you know if you can't say for sure that it was something other than hail with certainty, then I think you do give the benefit of the doubt to the insured. In this situation, with this type of storm.
>
> *Id.* at p. 15. On the present showing, defendants' motion would be granted as to the punitive damages issue even if the bad faith claim had otherwise survived. *See Willis,* 42 F.3d at 614–15.

Finally, defendant Farmer's Insurance Exchange moves for summary judgment on plaintiff's breach of contract claim, asserting that the only parties to the insurance agreement were plaintiff and Farmers Insurance Company. Plaintiff does not address that argument in his response, contending instead that Farmers Insurance Exchange can be sued for bad faith. As plaintiff has not refuted defendants' evidence that Farmers Insurance Exchange is not a party to the homeowners insurance contract at issue in this case, Farmers Insurance Exchange is entitled to judgment on plaintiff's breach of contract claim.

Accordingly, defendants' motion for summary judgment [Doc. # 77] is **DENIED** with respect to plaintiff's breach of contract against Farmers Insurance Company and **GRANTED** with respect to plaintiff's contract claim against Farmers Insurance Exchange and as to his bad faith claims against both defendants. Judgment will be entered on those claims in defendants' favor when the case is concluded with respect to all claims and parties. *See* Fed.R.Civ .P. 54(b).

***5 IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1807158

## Footnotes

1 There was also an exclusion for water damage. However, the parties have focused in their briefs on the exclusion for wear and tear or deterioration—whether defendants wrongly denied plaintiff's claim for a roof replacement.

2 Plaintiff denies that the photographs accurately represent all damaged property.

3 Plaintif asserts that the doctrine of reasonable expectations should be applied to construe the contract, with the result that the wear, tear and deterioration exclusion would not preclude coverage for his claim. As the court has concluded the policy is not ambiguous, the doctrine cannot be applied. *Am. Econ. Ins. Co. v. Bogdahn,* 91 Fed.Appx. 643, 645 (10th Cir.2004) (unpublished opinion).

4 As this is a diversity action the substantive law of the State of Oklahoma applies.

5 Ms. Luther also objected to Ms. Merritt's asserted failure to "consider all of the evidence that would weigh in favor of paying the claim," including the roofer's concerns and the fact that other roofs in the neighborhood had been replaced. Plaintiff's Exhibit C, p. 42. However, Ms. Merritt had Mr. Cagle point out what he believed to be hail damage to the roof, see plaintiff's Exhibit A, pp. 22–23, and she would have been aware that other roofs in the neighborhood had been replaced.. Plaintif, himself, noted that Farmers had paid 16 replacement claims in the same neighborhood. Plaintiff's response, p. 19.

6 Farmers sent two adjusters to the site, although the involvement of the second adjuster, Paul Bellah, apparently was limited to inspecting the roof for damage with Ms. Merritt. Plaintiff's Exhibit A, pp. 19, 2, 22.

7 Plaintiff asserts defendants "knowingly collected increased replacement value homeowner's premiums from Mr. Lopez for over seventeen years and never disclosed to him that it would exclude coverage for damage to his roof due to normal aging." Plaintiff's response, p. 25. However, "conduct of the insurer and the agent in selling and issuing the policy, cannot give rise to the tort of bad faith breach of an insurance contract." *Claborn v. Washington Nat'l Ins. Co.,* 910 P.2d 1046, 1051 (Okla.1996). Accord *Hays v. Jackson National Life Ins. Co.,* 105 F.3d 583, 590 (10th Cir.1997) ("The tort of bad faith breach of an insurance contract must be based upon an insurer's wrongful denial of a claim; it cannot be based upon the conduct of the insurer in selling and issuing the policy.").

8 Plaintiff has submitted evidence that Farmers had 21 claims from homeowners in plaintiff's neighborhood arising out of the February 10, 2009, storm. The insurer paid 16 property owners benefits for totaled roofs. Four property owners "were not paid for a complete new roof based on lack of suficient covered loss" and one's claim was denied as "an inspection revealed no hail damage." Plaintiff's Exhibit I. Plaintiff submits that his attorney represents two of the four denied claims. He asserts that both property owners had older wood roofs and their claims were denied based on the wear and tear exclusion in the policy. However, plaintif has not shown how these numbers reflect a pattern and practice of wrongful denial of claims by Farmers.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.