2024 WL 4101725
Only the Westlaw citation is currently available.
United States District Court, W.D. Oklahoma.

Roshan PATEL, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Case No. CIV-22-280-R
|
Signed July 23, 2024

**Attorneys and Law Firms**

Jason J. Waddell, Jason Waddell PLLC, Oklahoma City, OK, for Plaintiff.

Elizabeth A. Snowden, Joseph T. Acquaviva, Jr., Wilson Cain & Acquaviva, Oklahoma City, OK, Andrew G. Wakeman, John S. Gladd, Thomas H. Gayle, Jr., Atkinson Brittingham Gladd Fiasco Edmonds & Annis, Tulsa, OK, for Defendant.

## ORDER

DAVID L. RUSSELL, UNITED STATES DISTRICT JUDGE

***1** In this diversity case, Plaintiff Roshan Patel asserts breach of contract and tort claims under Oklahoma law against his automobile insurer, State Farm. Plaintiff contends that State Farm breached the insurance policy and acted in bad faith by undervaluing the actual cash value of his vehicle, forcing him to seek an appraisal, and refusing to repair the vehicle. State Farm has filed a Motion for Summary Judgment [Doc. No. 53] arguing that the undisputed material facts establish that State Farm complied with the policy and did not act in bad faith in handling Plaintiff's claim. The motion is fully briefed and at issue [Doc. Nos. 55, 56]. For the reasons explained below, State Farm's motion is granted.

### FACTUAL BACKGROUND

Plaintiff's 2016 Tesla Model X P90D is insured under an automobile policy issued by State Farm. *See* Defendant's Statement of Undisputed Material Facts at ¶ 1.[1] The policy includes the following provisions:

1. We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

a. Pay the cost to repair the covered vehicle minus any applicable deductible.

* * *

b. Pay the actual cash value of the covered vehicle minus any applicable deductible.

(1) The owner of the covered vehicle and we must agree upon the actual cash value of the covered vehicle. If there is disagreement as to the actual cash value of the covered vehicle, then the disagreement will be resolved by appraisal upon written request of the owner or us, using the following procedures:

(a) The owner and we will each select a competent appraiser.

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or we may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the covered vehicle. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the covered vehicle and us.

(f) We do not waive any of our rights by submitting to an appraisal.

(2) The damaged covered vehicle must be given to us in exchange for our payment, unless we agree that the owner may keep it. If the owner keeps the covered

EXHIBIT
24

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

> vehicle, then our payment will be reduced by the value of the covered vehicle after the loss.

*Id.* at ¶ 4. Put more succinctly, the policy provides that State Farm has the right to choose to settle a claim by either paying the cost to repair the vehicle or paying the actual cash value of the vehicle, and that any disagreement over the actual cash value will be resolved by appraisal upon request of the owner or State Farm.

***2** Plaintiff submitted a claim to State Farm after his Tesla was involved in an accident that caused a twist to the vehicle's roof spine. *Id.* at ¶¶ 2-3. The vehicle was taken to GW & Sons repair facility, a State Farm employee spoke to the repair facility regarding a virtual estimate of the vehicle, and State Farm subsequently completed an initial estimate. *Id.* at ¶¶ 5-6. State Farm then requested a report from CCC[2] for a valuation to ensure that the vehicle was repairable. *Id.* at ¶ 6. According to State Farm's claim notes, the CCC report came back showing the vehicle as repairable, State Farm reviewed the estimate with the repair facility, and the repair facility informed State Farm that it would begin to tear down the vehicle to determine if there were any significant supplements before ordering the replacement parts. *Id.* at ¶ 7. The claim notes next reflect that on December 1, 2021, the repair facility advised State Farm that the tear down had been completed, there would be a $3,000 supplement to the estimate, this was the repair facility's first twist of spine repair on a Tesla Model X, they could not tell if there was any further damage until they started the repairs, and there was a concern about the ability to get the doors aligned and operating properly. *Id.* at ¶ 8. The claim notes also reflect that a State Farm representative spoke to a Tesla technician who confirmed that spine repairs are rare. *Id.* at ¶ 9.

That same day, State Farm explained to Plaintiff that the repair shop added a $3,000 supplement, there was a possibility of additional damage, this was unknown territory because spine cases are usually total losses, and State Farm was concerned about additional supplements. *Id.* at ¶ 10. State Farm spoke with Plaintiff again later that day and advised that there may also be issues with part delays and a possibility that the spine will not align. *Id.* at ¶ 11. Plaintiff advised State Farm that he would like the vehicle repaired. *Id.*

The next day, December 2, 2021, State Farm determined that the vehicle would be handled as a total loss. *Id.* at ¶ 12. State Farm communicated the decision to Plaintiff the same day. On December 8, 2021, State Farm informed Plaintiff that it would pay $52,308.25 for the total loss of the vehicle, which was consistent with the valuation generated by the CCC report. *Id.* at ¶ 13.

Plaintiff contacted State Farm on December 9, 2021 and advised that he was unhappy with the valuation of the vehicle. *Id.* at ¶ 14. State Farm told Plaintiff he could provide additional comparable vehicles but that would not guarantee the valuation would change. State Farm also advised Plaintiff that he could invoke the appraisal provision of the policy if he was still unhappy. *Id.*

On December 23, 2021, a claim note was entered indicating that State Farm determined the vehicle to be a total loss based on information available at the time of the evaluation and unknowns, questions of repairability, and the ability to place the vehicle into pre-loss condition. *Id.* at ¶ 15. That same day, Plaintiff contacted State Farm and advised that his appraiser had appraised the vehicle value at $67,000, the CCC report was missing certain options for the vehicle, he would send over the vehicle window sticker so the valuation could be updated, and he would like the vehicle repaired. *Id.* at ¶ 16. State Farm acknowledges that the CCC report they initially obtained did not account for all the options included with Plaintiff's Tesla. State Farm also acknowledges that the CCC report they sent to Plaintiff did not provide the comparable vehicles used to generate the valuation. However, a team manager for State Farm testified that although it sent the wrong CCC report to Plaintiff, State Farm had a CCC report that included two comparable vehicles. *Id.* at ¶¶ 36-38.

On December 26, 2021, Plaintiff submitted his appraisal to State Farm. *Id.* at ¶ 17. Plaintiff admits that he demanded an appraisal to determine the actual cash value of the vehicle. *See* Plaintiff's Response to Defendant's Undisputed Material Facts, ¶ 17. The next day, on December 27, 2021, Plaintiff submitted additional details regarding his vehicle to State Farm. *See* Defendant's Statement of Undisputed Material Facts at ¶¶ 18, 44. On December 28, 2021, Plaintiff called State Farm and advised that he had submitted his appraisal. *Id.* at ¶ 19. State Farm then submitted the claim to its appraiser and, on January 6, 2022, noted receipt of the appraisal that agreed with Plaintiff's appraiser that the fair market value of the vehicle was $64,600. *Id.* at ¶ 20. As Plaintiff notes, this is a $14,153.00 increase over the valuation generated by the CCC report that was missing certain vehicle options.

***3** The claim notes then reflect that a State Farm team manager reviewed the claim on January 21, 2022 and noted

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the adjusted valuation of the vehicle, that Plaintiff wanted the vehicle repaired, that the repair shop had since completed a spine repair on another vehicle with less severe damage, that the repair shop anticipated issues with connection points and aligning the doors, and that State Farm was proceeding with treating the claim as a total loss because there was no certainty that the repair would remain less than the actual cash value or that that any attempted repair will even be successful. *Id.* at ¶ 21. This information was conveyed to Plaintiff and State Farm indicated it would settle the claim for the actual cash value of the vehicle as determined by the appraisal. *Id.* at ¶¶ 24-26. After Plaintiff initiated this action, State Farm sent Plaintiff a check for the appraised amount, which Plaintiff has not cashed. *Id.* at ¶ 33.

## STANDARD OF DECISION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citing Fed. R. Civ. P. 56(e)). Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## DISCUSSION

State Farm moves for summary judgment on Plaintiff's breach of contract and bad claims, arguing that it has tendered the actual cash value of the vehicle as determined by the appraisal process and there is no evidence of bad faith. Plaintiff contends that summary judgment is not warranted because State Farm incorrectly estimated the value of his vehicle and refused to repair it even though it did not meet the total loss thresholds established by Oklahoma law. Each claim is addressed in turn.

### A. Breach of Contract

Plaintiff's overarching complaint is that State Farm breached the insurance contract by paying the actual cash value of his vehicle rather than repairing it, as he requested. According to Plaintiff, he reasonably expected that State Farm would repair his vehicle unless the damage exceeded the total loss thresholds set by certain Oklahoma statutes. This argument is unpersuasive for two reasons.

First, the reasonable expectations doctrine is not applicable where, as here, the policy language is unambiguous. In *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861 (Okla. 1996), the Oklahoma Supreme Court set out the rules that govern the interpretation of an insurance contract:

> In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. We do not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts.

***4** *Id.* at 869. If, however, there is an "ambiguity or conflict in the policy provisions, a policy of insurance is to be construed strictly against the insurer and in favor of the insured." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003). In doing so, courts are required to apply the reasonable expectations doctrine "to aid ... in discerning the intention of the parties ...." *Id.* "Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." *Id.*

Here, the policy language is not susceptible to more than one meaning. The policy provides that "We [meaning State Farm] have the right to choose to settle with you ... in one of the following ways: a. Pay the cost to repair the covered vehicle minus any applicable deductible.... b. Pay the actual cash value of the covered vehicle minus any applicable deductible." This policy language is unambiguous in permitting "State Farm, and only State Farm, ... to choose whether to pay the cost to repair the Car, less any deductible, or pay the actual cash value of the car, less any deductible." *Soin v. State Farm Mut. Auto. Ins. Co.*, 631 F. Supp. 3d 490, 494–95 (S.D. Ohio 2022) (finding that similar language was unambiguous and the policy was not breached where insurer paid all repair invoices). Further, these provisions do not require the vehicle to meet any specific damage threshold before State Farm may elect to settle a claim by paying the actual cash value and Plaintiff has not pointed to any policy provisions that might suggest otherwise. Because the policy language is not ambiguous, there is no requirement that it be construed against the insurer or that it be interpreted by utilizing the reasonable expectations doctrine. Instead, the Court is required to enforce the policy according to its terms, which plainly permit State Farm to choose how to settle a claim.

Second, the Oklahoma statutes Plaintiff cites do not apply in the way he asserts. Plaintiff argues that State Farm violated Okla. Stat. tit. 47, § 1111 by not properly valuing the vehicle and by refusing to repair the vehicle even though the cost to repair did not exceed 60% of the value. In making this argument, Plaintiff cites to the following definitions and provisions contained in § 1111:

A. As used in this section:...

2. "Fair market value" means the value of a vehicle as listed in the current National Auto Dealers Association guidebook or other similar guidebook or the actual cash value, whichever is greater;...

4. "Total loss" means a loss which is equal to the fair market value of the vehicle immediately prior to the damage to or theft of the vehicle;...

B. If an insurance company pays a claim for a loss which is less than a total loss but the cost of repairing the vehicle for safe operation on the highway exceeds sixty percent (60%) of the fair market value of the vehicle ... any holder of the certificate of title for the vehicle shall return the certificate of title to Service Oklahoma or a licensed operator within thirty (30) days from receipt of payment for the loss.

In *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-01076-PRW, 2022 WL 109003, at *4 (W.D. Okla. Jan. 11, 2022), the court considered, and rejected, the argument that § 1111 governs insurance settlements. As explained in *Curtis*,

> [s]ection 1111 falls within the "Vehicle License and Registration Act" chapter of the Oklahoma "Motor Vehicles" title. The section establishes procedures for determining when a vehicle is a total loss and for returning certificates of title to the Oklahoma Tax Commission after a vehicle has been totaled and will be either salvaged or junked—it does not provide a framework for insurance settlements.

***5** *Id. See also Hickman v. State ex rel. Serv. Oklahoma*, 530 P.3d 96, 100 (Okla. Civ. App. 2023) (describing § 1111 as a "salvage title law" and noting that it sets out "[t]he process or procedural requirements for the issuance of the appropriate title following an event that causes a 'total loss' of a vehicle"); *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-PRW, 2020 WL 2461482, at *3 (W.D. Okla. May 12, 2020) (explaining that § 1111 "only provides the circumstances in which an insurer or other owner must obtain a salvage title for a total loss vehicle; it does not instruct insurers how to determine actual cash value"); *Conatzer v. Am.Mercury Ins. Co.*, 15 P.3d 1252, 1256 (Okla. Civ. App. 2000) (describing

section 1111 as a "statutory mandate regarding acquiring a salvage title"). The Court agrees with the analysis in *Curtis* – section 1111 concerns when a vehicle must obtain a salvage title following a total loss and does not dictate how an insurer must settle an insurance claim. [3]

Plaintiff additionally argues that State Farm violated Okla. Stat. tit. 36, § 1250.8, which is part of the Oklahoma Unfair Claims Settlement Practices Act. This provision is titled "Motor vehicle total loss or damage claim" and sets out the methods that may be used for the adjustment of first party motor vehicle total losses on the basis of actual cash value. Plaintiff contends that State Farm's reliance on the improper CCC report and refusal to repair his vehicle run afoul of the requirements set out in § 1250.8(A)(2). This provision provides that:

> An insurer may elect a cash settlement based upon the actual cost, less any deductible provided in the policy, to purchase a comparable motor vehicle, including all applicable taxes, license fees and other fees incident to a transfer of evidence of ownership, or a comparable motor vehicle. Such cost may be determined by:
>
> a. the cost of a comparable motor vehicle in the local market area when a comparable motor vehicle is currently or recently available in the prior ninety (90) days in the local market area,
>
> b. one of two or more quotations obtained by an insurer from two or more qualified dealers located within the local market area when a comparable motor vehicle is not available in the local market area, or
>
> c. the cost of a comparable motor vehicle as quoted in the latest edition of the National Automobile Dealers Association Official Used Car Guide or monthly edition of any other nationally recognized published guidebook.

*Id.* at § 1250.8(A)(2). The next subsection provides that an insurance settlement that deviates from the methods described in subsection A shall support the deviation "by documentation giving particulars of the condition of the motor vehicle." *Id.* at § 1250.8(B).

This statute does not provide a private right of action and "the Tenth Circuit has rejected the argument that, because existing law is part of every contract, a violation of the Act may be asserted under a contractual theory." *Morgan v. Valley Ins. Co.*, No. CIV-07-799-D, 2009 WL 1683787, at *1 (W.D. Okla. June 12, 2009) (citing *Council Oaks Learning Campus, Inc. v. Farmington Cas. Co.*, No. 99–5122, 2000 WL 376623, *3–4 (10th Cir. April 13, 2000) (table)). Thus, even if State Farm's conduct violated this subsection, Plaintiff could not recover for the alleged violation under a breach of contract theory. *Id.* ("The Court concludes that the Oklahoma Supreme Court would not permit a contractual recovery for an alleged violation of the Act[.]"); *Curtis*, 2022 WL 109003 ("[E]ven if Progressive had violated either section 1111 or section 1250.8, neither statute creates a private right of action by which [plaintiff] may seek to enforce the standards."); *Miller v. Farmers Ins. Grp.*, No. CIV-10-466-F, 2012 WL 8017244, at *13 (W.D. Okla. Mar. 22, 2012) ("The court therefore concludes that plaintiff may not rely upon the cited statutes for a contractual recovery."). [4]

***6** Plaintiff additionally argues that State Farm breached the insurance policy by giving him an "improper and lowball offer of $50,447.00" which forced him to demand an appraisal. The undisputed facts show that the valuation report State Farm obtained from CCC did not include all the options included with Plaintiff's Tesla. However, Plaintiff received the report showing the missing options, notified State Farm, and State Farm indicated that Plaintiff could send in additional comparable vehicles and additional information about the options so the valuation could be updated. Although Plaintiff did submit additional details regarding the vehicle, he also admits that he demanded an appraisal to determine the actual cash value of the vehicle. The policy provides that a disagreement over the actual cash value of the vehicle will be resolved by appraisal upon written request of the owner or the insurer and that the appraisal "will be binding on the owner of the covered vehicle and us." Plaintiff invoked the appraisal process, the appraisal resulted in an increase in value, and State Farm tendered all damages as determined by the appraisal. Although Plaintiff may have preferred for State Farm to change its decision on how to settle the claim following the increased valuation, the policy permits State Farm to choose to settle a claim by paying the actual cash value of the vehicle.

Under the plain language of the policy, State Farm was permitted to settle the loss by paying the cost to repair the vehicle or paying the actual cash value. State Farm elected to do the latter and, after Plaintiff disagreed with State Farm's valuation and demanded an appraisal, State Farm tendered the appraised value of the vehicle. The undisputed facts therefore establish that State Farm complied with the policy terms and,

even drawing all reasonable inference in Plaintiff's favor, the evidence does not present a sufficient factual disagreement such that submission to a jury is warranted. State Farm is therefore entitled to summary judgment on the breach of contract claim.

**B. Breach of the Duty of Good Faith**

Plaintiff contends that, even in the absence of a viable breach of contract claim, there is a factual dispute regarding the reasonableness of State Farm's conduct that precludes summary judgment on his bad faith claim. Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and [a] violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). In order to succeed on a bad faith claim, a plaintiff bears the burden of proving four elements: (1) he was entitled to coverage under the insurance policy; (2) the insurer's actions were unreasonable; (3) the insurer failed to deal fairly and act in good faith when handling the claim; and (4) the breach of the duty of good faith and fair dealing was the direct cause of the plaintiff's injury. *See* *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005). "The decisive question is whether the insurer had a good faith belief, *at the time its performance was requested*, that it had justifiable reason for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) (quotation marks and citation omitted).

Importantly, "the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer." *Badillo*, 121 P.3d at 1094. Further, an insurer's investigation of a claim "need only be reasonable, not perfect." *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) (citing *Buzzard*, 824 P.2d at 1109).

Plaintiff identifies a number of actions that he argues are evidence of State Farm's bad faith. First, Plaintiff complains that State Farm failed to conduct a reasonable investigation because it did not include certain options on the CCC report which caused the vehicle to be seriously undervalued. State Farm acknowledges that some of the vehicle options were not included on the CCC valuation report. However, State Farm informed Plaintiff that he could send in additional information about the vehicle's value. Plaintiff opted to initiate the appraisal process and at that point, the parties were bound by the value as determined by the appraiser. Further, State Farm has introduced evidence that it also considered other factors, including concerns about the extent of the damage and the ability to place the vehicle into its pre-loss condition. Plaintiff does not specifically controvert these assertions with evidentiary material and instead relies on his argument that State Farm improperly declared the vehicle a total loss under Oklahoma law. Generally, to put a bad faith claim premised on an inadequate investigation to a jury, a plaintiff must come forward with evidence that "suggest[s] a sham defense or an intentional disregard of uncontrovertible facts." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012) (quotation marks omitted). Taking the facts in the light most favorable to Plaintiff, there is not sufficient evidence from which a reasonable juror could infer that State Farm intentionally disregarded facts, has constructed a sham defense, or was anything beyond merely negligent in failing to include the correct vehicle options.

***7** Plaintiff next complains that State Farm sent Plaintiff a false and misleading CCC valuation report and that he relied on the report in requesting an appraisal. State Farm acknowledges that it sent Plaintiff the wrong report but has also introduced uncontroverted testimony that it utilized a CCC report that included comparable vehicles. Further, as previously noted, Plaintiff was informed that he could send in additional comparable vehicles or updated information about the options available on his vehicle. In any event, the policy provides an appraisal process for resolving disagreement about the actual cash value, Plaintiff invoked the appraisal process, and State Farm complied with the appraisal process. Again, there is not sufficient evidence from which a reasonable juror could conclude that State Farm's sending of the wrong CCC report was more than negligent. *See* *Klintworth*, 2022 WL 1021750, at *6 (explaining that an insurer's "discrete and isolated failure ... tends to support [that the insurer] only acted negligently".)

Plaintiff additionally argues that State Farm did not change its total loss determination after receiving the appraisal, State Farm refused to repair the vehicle contrary to Plaintiff's wishes, and the policy does not allow Plaintiff to dispute State Farm's decision. These assertions are not indicative of bad faith, but in fact show that State Farm complied with the policy, which gives "State Farm, and <u>only</u> State Farm" the right to choose how to settle the claim. *Soin*, 631 F. Supp. 3d at, 495.

Viewing the facts in the light most favorable to Plaintiff, there is not sufficient evidence from which a reasonable juror could conclude that the State Farm did not have a good faith believe that it had a justifiable reason for treating his vehicle as a total loss or that its errors in valuing the vehicle were the result of bad faith conduct as opposed to mere negligence. Accordingly, State Farm is entitled to summary judgment on Plaintiff's bad faith claim.

**CONCLUSION**

For the reasons explained above, Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 53] is GRANTED. A separate judgment will be entered.

IT IS SO ORDERED this 23 rd day of July, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4101725

## Footnotes

1 Unless otherwise noted, the facts included in this section include facts that are properly supported by evidentiary materials in the record and are either admitted or not properly controverted by Plaintiff. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact ... is genuinely disputed must support the assertion by: (A) citing to particular part of materials in the record...."); LCvR56.1(e) ("All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule.").

2 CCC is a company that State Farm utilizes for assistance in arriving at vehicle market values. *See* Defendant's Answer [Doc. No. 3] at ¶¶ 4-5.

3 *Curtis* further noted, and this Court agrees, that "[s]ection 1111 also does not fall in the correct statutory title to be amenable to the 'construed and applied in accordance with such conditions and provisions as would have applied had such policy ... been in full compliance with this Code' requirement of Title 36, § 3620. Section § 3620 refers only to compliance with the Insurance Code, which is contained wholly in Title 36, whereas section 1111 is found in Title 47." *Curtis*, 2022 WL 109003, at *4.

4 The Unfair Claims Settlement Practices Act can, however, "provide the district court with guidance in determining whether particular conduct on the part of an insurer is unreasonable and sufficient to constitute a basis for a bad faith claim." *Beers v. Hillory*, 241 P.3d 285, 294 (Okla. Civ. App. 2010). Still, "a violation of the Act does not necessarily establish bad faith. An insurer may carelessly fail to perform some duty required by the statute with such frequency to warrant administrative sanction, but that does not establish more than negligent conduct in any individual case." *Id. See also Klintworth v. Valley Forge Ins. Co.*, No. 21-5029, 2022 WL 1021750, at *6 (10th Cir. Jan. 31, 2022) ("An insurer's failure to conform to the UCSPA, however, is alone insufficient to establish bad faith.").

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.